IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GROSSO ENTERPRISES, INC., | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 11-1484 |
| DOMINO'S PIZZA LLC, a/k/a DOMINO'S PIZZA FRANCHISING LLC, a/k/a DOMINO'S PIZZA MASTER ISSUER LLC, | : | |
| Defendant. | : | |

DuBOIS, J.  March 9, 2011

**MEMORANDUM**

**I. INTRODUCTION**

Plaintiff Grosso Enterprises, Inc. ("Grosso Enterprises"), a franchisee of defendant Domino's Pizza LLC ("Domino's"), seeks a temporary restraining order ("TRO") to enjoin defendant from enforcing the termination of plaintiff's franchise agreement.

Presently before the Court is plaintiff's Motion for a Temporary Restraining Order, filed on March 2, 2011.[1] Defendant filed a response to the motion on March 4, 2011. The Court conducted a hearing on the motion on March 7, 2011. For the reasons discussed below, the Court grants plaintiff's Motion for a Temporary Restraining Order.

---

[1] The motion papers also request entry of a preliminary injunction. That part of the motion will be addressed at a later date.

1

## II. BACKGROUND

Plaintiff Grosso Enterprises is a Pennsylvania corporation "created with the sole purpose of operating a Domino's franchise." (Compl. ¶¶ 1, 9.) In July 1996, Grosso Enterprises and Domino's entered into a Standard Franchise Agreement granting Grosso Enterprises a franchise to operate a Domino's Pizza Store ("the Store") located at 148 Wilmington Pike, in West Chester, Pennsylvania, for a term of ten years. (Id. ¶¶ 10, 11.) On July 31, 2006, Grosso Enterprises and Domino's entered into a renewal Standard Franchise Agreement ("the Agreement") granting Grosso Enterprises a franchise for another ten years. (Compl., Ex. A.) Gregory T. Grosso ("Grosso") is named as the "Controlling Person" in the Agreement, with an 85% ownership in Grosso Enterprises.

On May 5, 2010, Domino's terminated the Agreement with Grosso Enterprises. (TRO Hr'g, Ex. D-12.) After permitting Grosso Enterprises to continue operating the Store for a period of time, Domino's notified Grosso Enterprises by letter dated February 28, 2011 that it would enforce termination of the Agreement "effective immediately." (Compl., Ex. L.) On March 1, 2011, Domino's ceased delivery of supplies to Grosso Enterprises and terminated Grosso Enterprises' "computer access allowing credit card sales." (Pl.'s TRO Mot. at 7.)

### A. The Three Alleged Defaults

The present dispute between the parties arises out of a series of three defaults, or breaches of the Agreement, allegedly committed by Grosso and Grosso Enterprises.

First, in a "Notice of Default" dated November 3, 2009, Domino's notified Grosso Enterprises that it had violated Section 15 of the Agreement by failing to comply with Domino's Criminal Background Check Standard ("CBC Standard"). (Compl., Ex. B.) Domino's first apprised franchisees of the new CBC Standard, to take effect August 1, 2009, through a mass e-

2

mail to all franchisees dated June 11, 2009, followed by reminder e-mails to all franchisees dated July 20, 2009, and July 31, 2009. (TRO Hr'g, Exs. D-1, D-2, D-3.) Grosso and Grosso Enterprises deny having ever received these e-mails. Upon receipt of the November 3, 2009 Notice of Default, Grosso Enterprises contracted with HireRight in compliance with the CBC Standard. (Pl.'s TRO Mot. at 3.) By letter dated November 11, 2009, Domino's notified Grosso Enterprises that Grosso Enterprises had cured the default described in the November 3, 2009 letter. (Compl., Ex. C.)

Second, Domino's notified Grosso Enterprises, in a "Notice of Default" dated March 9, 2010, that Grosso Enterprises was in default of Section 15 of the Agreement due to its failure to "adhere to the standards, operating procedures and rules prescribed by [Domino's]." (TRO Hr'g, Ex. D-6.) The March 9 letter cites a series of thirteen violations of Domino's operational standards relating to, inter alia, the use of a "properly functioning time-delay safe," the shelf-life of product ingredients, and the appearance and cleanliness of the Store and its employees. (Id.) Grosso Enterprises promptly remedied those violations. By letter dated April 21, 2010, Domino's notified Grosso Enterprises that it had cured the default described in the March 9, 2010 letter. (Compl., Ex. F.)

Third, in a "Notice of Default" dated March 29, 2010, Domino's notified Grosso Enterprises that it had violated Section 10.3 of the Agreement as a result of Grosso's failure to attend a required "High Performance Franchisee" ("HPF") training class. (TRO Hr'g, Ex. D-11.) Domino's first notified franchisees about the class via a mass e-mail to all franchisees dated February 26, 2009. (Id., Ex. D-8.) On August 17, 2009, Domino's e-mailed Grosso Enterprises and seven other franchisees, informing them that they were the only franchisees in Domino's Northeast Zone who had not yet completed the HPF course, and alerting them to upcoming HPF

3

class dates and locations. (Id., Ex. D-19.) Grosso and Grosso Enterprises deny having received the February 26, 2009 and August 17, 2009 e-mails. By letter dated September 21, 2009, sent via regular and certified mail, Domino's notified Grosso Enterprises that Grosso was "required to take [the HPF] class," and listed a number of upcoming HPF class dates and locations. (Id., Ex. D-9.) Domino's again contacted Grosso Enterprises by letter dated January 11, 2010, advising it of the need to complete the HPF course. (Id., Ex. D-10.) As Grosso had not yet attended the mandatory HPF course, Domino's sent Grosso Enterprises the third Notice of Default on March 29, 2010, providing that the default "shall be cured by registering for, attending and successfully completing the HPF class to be held May 4-6, 2010 . . . in Ann Arbor, Michigan." (Id., Ex. D-11.) Grosso did not attend the HPF class on May 4-6, 2010, and has not attended an HPF class since that date.

    **B.    Termination of the Agreement**

By letter dated May 5, 2010, Domino's terminated the Agreement, notifying Grosso Enterprises that the termination would be effective May 8, 2010. (Id., Ex. D-12.) Grosso Enterprises' franchise was terminated pursuant to Sections 18.2.1(l) and 18.2.2(d) of the Agreement. (Id.) Section 18.2.1(l) permits Domino's to terminate the Agreement if Grosso Enterprises or any of its owners "fail on three (3) or more occasions during any twelve (12) month period" to comply with any provision of the Agreement, "whether or not such failure to comply is [cured]." (Compl., Ex. A.) Section 18.2.2(d) provides that the Agreement may be terminated if Grosso Enterprises or any of its owners "fails to comply with any . . . provision of [the] Agreement or any specification, standard or operating procedure and fail to correct this failure within thirty (30) calendar days after written notice is delivered to [Grosso Enterprises]." (Id.)

In the Notice of Termination, Domino's "agree[d] to stay legal proceedings to enforce the termination, until June 7, 2010," in order to "afford [Grosso Enterprises] the opportunity to sell [the] Store to a purchaser who is acceptable to [Domino's]." (TRO Hr'g, Ex. D-12.) Domino's granted Grosso Enterprises additional extensions of time, until February 27, 2011, to find a suitable prospective purchaser, but plaintiff never submitted "a single proposed buyer." (Def.'s Resp. to Pl.'s TRO Mot. at 2; Compl., Ex. L.)

By letter dated February 28, 2011, Domino's notified Grosso Enterprises that it would enforce termination of the Agreement "effective immediately," and ordered Grosso Enterprises to "[i]mmediately cease and desist operations of the Store." (Compl., Ex. L.) On March 1, 2011, Domino's ceased delivery of supplies to Grosso Enterprises and terminated Grosso Enterprises' "computer access allowing credit card sales." (Pl.'s TRO Mot. at 7.)

**C. The Present Action**

Plaintiff filed the Complaint on March 2, 2011, asserting the following four claims: declaratory judgment (Count I), breach of contract (Count II), breach of the covenant of good faith and fair dealing (Count III), and tortious interference with existing and prospective contractual and business relations (Count IV). Plaintiff also filed its Motion for a Temporary Restraining Order that same day.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs district courts' authority to enter preliminary injunctions and temporary restraining orders. In determining whether to grant preliminary relief, "a court must consider whether the party seeking the injunction has satisfied four factors: (1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010) (citations omitted); see also Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999).

## IV. DISCUSSION

Based on the parties' motion papers, the facts and evidence presented at the March 7, 2011 hearing, and upon application of the guidelines set forth above for the issuance of TROs, the Court concludes that the issuance of a TRO restoring plaintiff to its condition prior to February 28, 2011 is appropriate.

### A. Likelihood of Success on the Merits

To obtain injunctive relief, plaintiff must produce evidence sufficient to demonstrate that it has a likelihood of success on the merits, that is, a "reasonable probability" of eventual success. McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009). "It is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." Punnett v. Carter, 621 F.2d 578, 583 (3d Cir. 1980) (citation omitted).

Grosso Enterprises' franchise was terminated pursuant to Sections 18.2.1(l) and 18.2.2(d)

6

of the Agreement. If the conditions justifying termination of the Agreement—as defined in Sections 18.2.1(l) and 18.2.2(d)—are not satisfied, plaintiff will prevail on the merits of one of its claims for breach of contract on the ground that defendant wrongfully terminated the Agreement, and on the related count seeking declaratory judgment.[2] The Court concludes that plaintiff has produced sufficient evidence to demonstrate a reasonable probability of success on the merits of its claim of wrongful termination.

---

[2] In its Complaint and Motion for a Temporary Restraining Order, plaintiff argues that it is likely to succeed on its claim for breach of the duty of good faith and fair dealing, and on its claim for tortious interference with contractual relations. Because the Court concludes that plaintiff has produced evidence sufficient to demonstrate a reasonable probability of success on its claim for breach of contract, the Court need not address the likelihood of success of plaintiff's other legal theories.

Section 15.4 of the Agreement requires that, in order for the "provisions of the Operating Manual . . . and the mandatory specifications, standards and operating procedures and rules prescribed from time to time by [Domino's]" to constitute provisions of the Agreement, they must be "communicated [by Domino's] to [Grosso Enterprises] in writing." Section 22.7 of the Agreement, the provision regarding "Notices," provides that "[a]ll written notices permitted or required to be delivered by the provisions of this Agreement or of the Operating Manual shall be deemed so delivered . . . one (1) day after transmission by facsimile or other electronic system, and addressed to . . . [Grosso Enterprises] at the most current principal business address or home address of which [Domino's] ha[s] been notified in writing." (Compl., Ex. A (emphasis added).)

The Court concludes that Section 22.7 requires all written communications e-mailed to Grosso Enterprises to be addressed to "Grosso Enterprises, Inc." and contain, in the body of the e-mail, Grosso Enterprises' "most current principal business address" or Grosso's most current home address. The parties did not present any testimony at the TRO hearing on the reason for Section 22.7's notice requirement, but the reason is obvious. The requirement that all electronic communications be "addressed to . . . [Grosso Enterprises] at the most current principal business address or home address of which [Domino's] ha[s] been notified in writing" is designed to avoid the very situation presented in this case and to focus attention on e-mails sent by Domino's to notify franchisees of the "provisions of the Operating Manual . . . and the mandatory specifications, standards and operating procedures and rules prescribed from time to time by [Domino's]" as distinguished from mass e-mails covering less important subjects. (Compl., Ex. A § 15.4.) Based on the Court's reading of Section 22.7, plaintiff has shown, for purposes of its TRO motion, that it did not default on completion of the HPF course requirement or compliance

with the new CBC Standard. Without these two defaults, defendant had no grounds for terminating the Agreement.

1. <u>The HPF Course Default</u>

Domino's asserts that Grosso Enterprises' third default occurred when Grosso failed to complete the required HPF course. Section 10.3 of the Agreement requires that Grosso Enterprises complete required supplemental or additional training "within one (1) year of the time in which it is originally offered by [Domino's]." The only logical interpretation of this provision is that Grosso Enterprises must complete the HPF course within one year from the time in which it is originally offered by Domino's <u>to Grosso Enterprises</u>. Neither the February 26, 2009 nor August 17, 2009 e-mails sent to franchisees regarding the HPF class satisfies Section 22.7's requirements: neither e-mail is specifically noticed to the attention of "Grosso Enterprises, Inc.," and neither contains Grosso Enterprises' "most current principal business address" or Grosso's most current home address. Moreover, plaintiff denies receiving those e-mails. The Court thus finds that the first notice of the HPF course requirement was communicated to plaintiff by letter dated September 21, 2009.

Under Section 10.3, plaintiff therefore would have until September 21, 2010—a year from September 21, 2009, the date on which the HPF course was initially offered to plaintiff—to complete the course requirement. Defendant sent plaintiff the notice of default regarding the HPF course on March 29, 2010, and only gave plaintiff until May 4, 2010 to cure the default. As such, on May 5, 2010, when Domino's attempted to terminate the Agreement, plaintiff had not yet defaulted on the HPF course requirement. Based on this analysis and the evidence presented thus far, the Court concludes that plaintiff has demonstrated a likelihood of success on the merits, as Domino's terminated the Agreement in contravention of the terms of Section 18.2.1(l),

9

which permits termination upon three defaults in a twelve-month period, and Section 18.2.2(d), which allows for termination if a default is not cured within thirty days' notice to Grosso Enterprises.

        2.    <u>The CBC Standard Default</u>

With respect to Grosso Enterprises' first alleged default—failure to abide by the CBC Standard—none of the three e-mails, dated June 11, 2009, July 20, 2009, and July 31, 2009, regarding Domino's new CBC Standard were noticed to the attention of "Grosso Enterprises, Inc.," and none contained Grosso Enterprises' "most current principal business address" or Grosso's most current home address. (TRO Hr'g, Exs. D-1, D-2, D-3.) Rather, all three e-mails were mass e-mails sent to a number of Domino's franchisees who were not identified in the e-mails, and plaintiff denies receiving them.[3] Plaintiff's first "notice" of the new CBC Standard, as required under Sections 22.7 and 15.4 of the Agreement, was Domino's November 3, 2009 Notice of Default—five months after the new standard was announced and three months after it went into effect. "[A]lmost immediately" upon receipt of the November 3, 2009 Notice of Default, plaintiff contracted with HireRight in compliance with the CBC Standard. (Pl.'s TRO Mot. at 3.) By letter dated November 11, 2009, defendant notified plaintiff that plaintiff had cured the default described in the November 3, 2009 letter. (Compl., Ex. C.)

Plaintiff could not have defaulted on compliance with a new CBC Standard of which it did not have notice. The Court thus concludes that, based on the evidence presented in conjunction with plaintiff's TRO motion, Domino's terminated the Agreement in contravention

---

[3] Steven O'Donnell, Domino's Franchise Operation's Area Leader for the Northeast Zone, testified that the franchisees were blind carbon copied on the e-mails.

of the terms of Sections 18.2.1(l), as Grosso Enterprises did not commit three defaults in a twelve-month period.

### C. The Irreparable Harm to Plaintiff Outweighs the Possible Harm to Defendant if Injunctive Relief is Denied

In determining whether preliminary relief should be granted, the Court must be satisfied that: (1) plaintiff will suffer from irreparable harm if the relief is not granted; and (2) the harm to plaintiff outweighs that harm to defendant if the requested relief is granted. "[A]n injury measured in solely monetary terms cannot constitute irreparable harm." Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 562 F.3d 553, 557 (3d Cir. 2009).

Grosso Enterprises has operated a Domino's franchise for over fourteen years, during which time it has expended $30,000 to $50,000 on required purchases and other improvements to the Store. (Compl. ¶ 19.) Grosso testified at the TRO hearing that he: began working as a Domino's driver in 1991, at age seventeen; was promoted to the position of Store Manager in 1993; opened his own Domino's franchise in 1996 after purchasing the Store for $90,000; and worked approximately sixty hours a week in the years prior to Domino's shut-down of the Store. The Court concludes that the loss of Grosso Enterprises' Domino's franchise, "an ongoing business representing many years of effort and the livelihood of its . . . owners, constitutes irreparable harm." Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of N.Y., Inc., 749 F.2d 124, 125-26 (2d Cir. 1984). "What plaintiff stands to lose cannot be fully compensated by subsequent monetary damages." Id. (loss of eleven-year old distributorship run by husband and wife could not be reduced entirely to monetary value).

Grosso has invested his entire adult life into operating a Domino's franchise through Grosso Enterprises. The loss of a fourteen-year franchise to Grosso Enterprises and to Grosso

cannot be measured solely in monetary terms.  By contrast, the harm to defendant if Grosso Enterprises continues to operate as a Domino's franchise until such time as the Court rules on the merits of plaintiff's claim is de minimus.  The Court thus concludes that both the second and third factors for granting a TRO weigh in plaintiff's favor.

### D.  The Public Interest Favors Injunctive Relief

There is no evidence that any harm would befall the general public by the granting of a TRO to allow plaintiff to continue operating as a Domino's franchise.  To the contrary, the public interest favors enforcing valid contracts and remedying wrongful breaches.  The Court thus concludes that the public interest favors preliminary relief in this case.

### V.  CONCLUSION

For the foregoing reasons, plaintiff's Motion for a Temporary Restraining Order is granted.  An appropriate order follows.